UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ENTERGY GULF STATES LOUISIANA, | * | CIVIL ACTION |
| L.L.C. AND ENTERGY TEXAS, INC. | * | |
| | * | NUMBER 3:14-cv-385 |
| VERSUS | * | |
| | * | JUDGE SHELLY D. DICK |
| LOUISIANA GENERATING, L.L.C. | * | |
| | * | MAG. JUDGE RICHARD L. |
| | * | BOURGEOIS, JR. |

*****************************************

## SECOND SUPPLEMENTAL AND AMENDING COMPLAINT

NOW INTO COURT, through undersigned counsel, come Entergy Gulf States Louisiana, L.L.C. and Entergy Texas, Inc. (collectively referred to as the "Entergy Plaintiffs"), which assert as follows:

**1.**

Plaintiff Entergy Texas, Inc. is a Texas Corporation with its principal place of business in the State of Texas.

**2.**

Plaintiff Entergy Gulf States Louisiana, L.L.C. is a Louisiana limited liability company, whose membership interests are owned by EGS Holdings, Inc., a Texas Corporation with its principal place of business in the State of Texas. All preferred membership interests of Entergy Gulf States Louisiana, L.L.C. are owned by Erie Indemnity Company, which is a Pennsylvania Insurance Business Corporation with its principal place of business in Pennsylvania.

**3.**

The businesses of Entergy Gulf States Louisiana, L.L.C. and Entergy Louisiana, LLC have been combined into a single entity named Entergy Louisiana, LLC since the original filing of this Complaint.

**4.**

This is a civil action seeking a declaratory judgment and damages that is being brought against defendant, Louisiana Generating, L.L.C. ("Louisiana Generating"). All of the member units of Louisiana Generating are owned by NRG South Central Generating LLC. All of the member units of NRG South Central Generating are owned by NRG Energy, Inc. NRG is a publicly traded Delaware corporation with its principal place of business in New Jersey.

**JURISDICTION AND VENUE**

**5.**

This court has jurisdiction of this action pursuant to 28 U.S.C.A § 1332, Diversity of Citizenship, in that the Entergy Plaintiffs are citizens of different States from the defendant, Louisiana Generating.

**6.**

The amount in controversy exceeds $75,000, exclusive of interest and costs.

**7.**

Venue is proper in this District because the allegations occurred and are occurring in this District, and the facilities at issue are operated and operating in this District.

## THE BIG CAJUN II POWER PLANT

**8.**

The Big Cajun II Power Plant (the "Plant" or "Big Cajun II") located in Pointe Coupee Parish, Louisiana, is a coal fired electric utility generating plant that consists of three units known as Units 1, 2, and 3.

**9.**

The Entergy Plaintiffs do not have, and never have had, an interest in Units 1 or 2.

**10.**

Unit 3 of the Plant and its associated common facilities are co-owned by the Entergy Plaintiffs and Louisiana Generating (as successor to Cajun Electric Power Cooperative, Inc.).

**11.**

The Entergy Plaintiffs have an undivided 42% ownership interest in Unit 3 and an undivided 14% ownership interest in the Common Facilities of the Plant.

**12.**

The Joint Ownership Participation and Operating Agreement ("JOPOA"), as amended, sets forth the rights, responsibilities and obligations of the parties with respect to the operation and maintenance of Unit 3.

**13.**

Under Section 4.1 of the JOPOA, the Entergy Plaintiffs appointed Louisiana Generating as their agent to act on their behalf during the term of the JOPOA. While Louisiana Generating has the authority under the JOPOA to operate and manage the

Entergy Plaintiffs' interest in Unit 3, the JOPOA provides that Louisiana Generating shall not act unreasonably.

**14.**

Furthermore, under Section 4.1 of the JOPOA, Louisiana Generating's agency authority is limited to actions "deemed necessary or advisable to effect the planning, design, licensing, acquiring of permits, construction, acquisition, completion, maintenance, operation, security, surveillance, decommissioning, and disposition of Coal Unit 3."

**15.**

Under Section 4.2 of the JOPOA, Louisiana Generating accepted the appointment as the Entergy Plaintiffs' agent and agreed to discharge its responsibilities in good faith, in accordance with good utility practice.

**16.**

Under Section 4.3 of the JOPOA, Louisiana Generating further agreed that as agent for the Entergy Plaintiffs, Louisiana Generating would make no adverse distinction between Unit 3 of the Plant and any other generating unit of the Plant solely because of the co-ownership of Unit 3.

**17.**

In addition, under Section 7.4 of the JOPOA, the Entergy Plaintiffs have the right "to inspect or audit at their own expense, the books of account and other records, in whole or in part, maintained by [Louisiana Generating] as Project Manager and agent at any reasonable time."

**18.**

As more fully described below, Louisiana Generating has failed and refused to comply with the terms of the JOPOA and has breached its duties of good faith and fair dealing, as well as the fiduciary duties that Louisiana Generating owes to the Entergy Plaintiffs as co-owners of Unit 3.

**19.**

The Entergy Plaintiffs have satisfied all conditions precedent to bringing the instant suit.

**FIRST CLAIM FOR RELIEF**

**20.**

On February 15, 2005, and December 8, 2006, the United States Environmental Protection Agency ("EPA") issued notices of violation ("NOVs") to Louisiana Generating, alleging that Units 1 and 2 of the Plant violated various provisions of the Clean Air Act.  The NOVs made no such allegations regarding Unit 3 of the Plant.

**21.**

On or about February 11, 2009, the EPA filed a Complaint in the United States District Court for the Middle District of Louisiana against Louisiana Generating (3:09-cv-00100-JJB-RLB) alleging the same violations contained in the NOVs with respect to Units 1 and 2 of the Plant.

**22.**

On or about February 18, 2010, the Louisiana Department of Environmental Quality ("LDEQ") also filed a Complaint against Louisiana Generating, joining the EPA's allegations with respect to Units 1 and 2 of the Plant.

**23.**

The Complaints filed by the EPA and the LDEQ alleged, among other things, that Louisiana Generating was responsible for the modification and operation of Units 1 and 2 of the Plant without necessary permits and without installing and employing the best available pollution control technology as required by the Clean Air Act.

**24.**

The Complaints filed by the EPA and LDEQ and the NOVs were limited to Units 1 and 2 of the Plant.

**25.**

The Entergy Plaintiffs were not a party to the Complaints filed by the EPA and the LDEQ.

**26.**

In December 2012, Louisiana Generating entered into a Consent Decree with the EPA and LDEQ to resolve the Complaints and NOVs regarding the modification and operation of Units 1 and 2 of the Plant.

**27.**

Although Unit 3 of the Plant was not at issue in the Complaints or the NOVs, as part of the Consent Decree, Louisiana Generating agreed to install and continuously operate a costly pollution control device called a Selective Non-Catalytic Reduction device or "SNCR" on Unit 3 of the Plant in order to resolve the NOVs pertaining to Units 1 and 2.

**28.**

Louisiana Generating's decision to install and operate an SNCR on Unit 3 of the Plant exceeded the limited scope of its agency authority.  Indeed, Louisiana Generating's decision to install and operate a SNCR on Unit 3 of the Plant was not "necessary or advisable to effect the planning, design, licensing, acquiring of permits, construction, acquisition, completion, maintenance, operation, security, surveillance, decommissioning, and disposition of Coal Unit 3."

**29.**

Prior to installing the SNCR on Unit 3 of the Plant to comply with the Consent Decree, there was no legal or commercial reason to do so.  In fact, in 2009, Louisiana Generating conducted a series of tests to determine the feasibility of a SNCR on Unit 3 of the Plant and decided against installing a SNCR on Unit 3 based on the results from those tests.

**30.**

Louisiana Generating made the decision to install and operate a SNCR on Unit 3 of the Plant solely for its own benefit to resolve the NOVs and Complaints filed by the EPA and LDEQ relating to Units 1 and 2, and to mitigate the damages being sought against it by those agencies.

**31.**

The costs of installing and continuously operating the SNCR at Unit 3 of the Plant exceeded $20,000,000.

**32.**

Louisiana Generating contends that the Entergy Plaintiffs are responsible for 42% (representing their ownership interests) of the costs of installing and continuously operating the SNCR at Unit 3 of the Plant.

**33.**

Louisiana Generating sent invoices totaling $8,907,247.56 to the Entergy Plaintiffs for the installation of the SNCR at Unit 3 of the Plant.  According to Louisiana Generating's records, the Entergy Plaintiffs should have only paid $8,657,090.55.  The difference is due to the fact that Louisiana Generating improperly withheld credits owed to the Entergy Plaintiffs and/or improperly shifted other costs to the Entergy Plaintiffs.

**34.**

In addition, Louisiana Generating has invoiced, and the Entergy Plaintiffs have paid, hundreds of thousands of dollars in ongoing costs related to the operation and maintenance of the SNCR.  These costs are continuing and are likely to increase in the future.

**35.**

The Entergy Plaintiffs are not obligated to share in the costs of installing and continuously operating the SNCR at Unit 3 of the Plant.

**36.**

The Entergy Plaintiffs paid under protest the invoices submitted by Louisiana Generating for the installation and ongoing operation of the SNCR, as prescribed by Section 9.11 of the JOPOA.

**37.**

Pursuant to the terms and conditions set forth in the JOPOA, the Entergy Plaintiffs are entitled to recover all amounts paid to date in connection with the installation and operation of the SNCR at Unit 3 of the Plant and a declaration that they are not obligated to pay ongoing maintenance and operation costs associated with the SNCR.

## SECOND CLAIM FOR RELIEF

**38.**

The Entergy Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 37.

**39.**

In 2010, unbeknownst to the Entergy Plaintiffs, Louisiana Generating filed a Complaint for Declaratory Judgment ("Complaint") against Illinois Union Insurance Company ("Illinois Union") in the United States District Court for the Middle District of Louisiana seeking recovery of the costs incurred to comply with the Consent Decree under Premises Pollution Liability II Insurance Policy No. PPL G23877399 001 ("Policy").

**40.**

Endorsement No. 001 to the Policy listed Big Cajun II as a covered location.

**41.**

Louisiana Generating did not include the Entergy Plaintiffs as Named Insureds or Additional Insureds on the Policy.

**42.**

Louisiana Generating never disclosed the existence of the Policy to the Entergy Plaintiffs.

**43.**

In its insurance action, Louisiana Generating sought recovery from Illinois Union of the costs paid by the Entergy Plaintiffs for the installation of the SNCR at Unit 3 of the Plant, including interest on the payments made by the Entergy Plaintiffs.

**44.**

Despite the fact that the Policy provided coverage for the Plant, including the Entergy Plaintiffs' interest in Unit 3, Louisiana Generating concealed the existence of the insurance policy and the Complaint from the Entergy Plaintiffs.

**45.**

Louisiana Generating attended Management Advisory Committee Meetings with the Entergy Plaintiffs on a quarterly basis during and after 2010 for purposes of discussing matters related to the operation of Unit 3 of the Plant.

**46.**

Louisiana Generating did not disclose the existence of the Policy or the Complaint to the Entergy Plaintiffs during the Management Advisory Committee Meetings or at any other time.

**47.**

Louisiana Generating intended to reap a windfall by keeping for its own account both the proceeds from the insurance action and the monies paid by the Entergy Plaintiffs for the installation of the SNCR at Unit 3 of the Plant.

**48.**

In 2013, three (3) years after Louisiana Generating filed the insurance action, the Entergy Plaintiffs fortuitously discovered that Louisiana Generating had purchased the Policy from Illinois Union and had filed its insurance action.

**49.**

Notably, Louisiana Generating alleged in its insurance action that Illinois Union was "obligated to pay any liability LaGen incurs in the EPA and LDEQ Action to mitigate and/or compensate for harm caused by **past emissions** from at least 2000 to the filing of the EPA Action." (emphasis supplied).

**50.**

In addition, on June 24, 2015, Louisiana Generating stated in its reply brief in further support of its motion for summary judgment on Illinois Union's duty to indemnify for costs incurred under the Consent Decree that the "the undisputed facts demonstrate that the Consent Decree Costs were incurred to mitigate and offset the alleged illegal emissions from Units 1 and 2 at Big Cajun II." Those Costs included the installation of the SNCR at Unit 3 of the Plant, which Louisiana Generating billed to the Entergy Plaintiffs.

**51.**

On May 13, 2014, however, in order for Louisiana Generating to justify its demand that the Entergy Plaintiffs pay for the SNCR, and thereby reap a windfall from the Entergy Plaintiffs, Louisiana Generating told the Entergy Plaintiffs that the installation and operation of the SNCR at Unit 3 of the Plant was "a prudent course of

action that will enable or better position Unit 3 to meet **expected** EPA emission standards." (emphasis supplied).

**52.**

When the Entergy Plaintiffs confronted Louisiana Generating about the lawsuit, Louisiana Generating's inconsistent statements, and the fact that Louisiana Generating was seeking recovery of the costs that the Entergy Plaintiffs had paid for the installation of the SNCR at Unit 3 of the Plant, Louisiana Generating offered to sign a limited Settlement Agreement with the Entergy Plaintiffs in exchange for the Entergy Plaintiffs' agreement to stay the instant litigation until after Louisiana Generating concluded its lawsuit against Illinois Union.

**53.**

On November 19, 2014, the Entergy Plaintiffs and Louisiana Generating entered into a Settlement Agreement ("Settlement Agreement I").

**54.**

Under Settlement Agreement I, Louisiana Generating agreed to reimburse the Entergy Plaintiffs from the "gross insurance proceeds collected in connection with the installation of the SNCR at Unit 3 of the Big Cajun 2 power plant" according to the parties' ownership interests, and the Entergy Plaintiffs, in turn, agreed to stay the instant lawsuit until resolution of Louisiana Generating's insurance action against Illinois Union.

**55.**

On May 26, 2017, Louisiana Generating and Illinois Union Insurance Company entered into a Receipt, Release, Settlement Agreement and Mutual Release.

**56.**

Louisiana Generating recovered an amount sufficient to reimburse the Entergy Plaintiffs for 100% of the costs they paid for the installation of the SNCR at Unit 3 of the Plant, including interest, under the terms of the Settlement Agreement.

**57.**

Louisiana Generating refuses to disclose what percentage of the amount it recovered from Illinois Union was "collected in connection with the installation of the SNCR at Unit 3 of the Big Cajun 2 power plant."

**58.**

On November 5, 2018, the Court held that Settlement Agreement I was unenforceable.

**59.**

As a result of the Court finding that Settlement Agreement I is unenforceable, Louisiana Generating has been unjustly enriched in that a portion of its recovery from Illinois Union is directly attributable to amounts previously billed to the Entergy Plaintiffs, which the Entergy Plaintiffs paid to Louisiana Generating.  In particular, Louisiana Generating has been enriched; the Entergy Plaintiffs have been impoverished; a connection exists between the enrichment and the impoverishment; no justification exists for the enrichment and impoverishment; and, unless the Court awards relief to the Entergy Plaintiffs, they have no available remedy of law.

**60.**

Pursuant to the doctrine of unjust enrichment, the Entergy Plaintiffs are entitled to recover from Louisiana Generating the costs they paid for the installation of the SNCR at

Unit 3 of the Plant, including interest from the date the payments were originally made to Louisiana Generating.

## THIRD CLAIM FOR RELIEF

### 61.

The Entergy Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 60.

### 62.

Since at least 2012, and continuing through today, Louisiana Generating has refused to comply with its contractual obligations under Sections 7.2 and 7.4 of the JOPOA to provide the Entergy Plaintiffs with access to the contracts and other documents that would allow the Entergy Plaintiffs to audit the millions of dollars in fuel supply invoices that the Entergy Plaintiffs have and continue to pay to Louisiana Generating in connection with the operation of Unit 3 of the Plant.

### 63.

Section 7.4 of the JOPOA states that "[i]n addition to the regular annual audit, the Co-Owners, individually or jointly, shall have the right, but not the obligation, to inspect or audit, at their own expense, the books of account and other records, in whole or in part, maintained by [Louisiana Generating] as Project Manager and agent at any reasonable time."

### 64.

Furthermore, Section 7.2 of the JOPOA obligates Louisiana Generating to work in good faith to attempt to obtain the necessary consents to allow the Entergy Plaintiffs to review confidential or proprietary information provided by third parties to Louisiana

Generating to the extent the Entergy Plaintiffs request the information for any proper purpose.

**65.**

In order to resolve a prior dispute with Louisiana Generating over the extent of the Entergy Plaintiffs' audit rights, Louisiana Generating and the Entergy Plaintiffs entered into a Settlement Agreement on December 13, 2002, which provided:

> Pursuant to confidentiality agreements to be executed by Entergy and the respective parties to the coal sales and transportation contracts, auditors for Entergy will be provided access to all the contracts and monthly invoices pertaining to the cost of coal as delivered to Big Cajun II and as billed to Entergy. The necessary confidentiality agreements were executed by November 22, 2002.

("Settlement Agreement II").

**66.**

After receiving access to the coal sales and transportation contracts, the Entergy Plaintiffs discovered that Louisiana Generating had concealed a $6,000,000 coal settlement refund from its coal suppliers of which $840,000 was owed to the Entergy Plaintiffs.

**67.**

The dispute over the $6,000,000 coal settlement refund was subsequently resolved.

**68.**

Consistent with its obligation under the JOPOA and Settlement Agreement II, Louisiana Generating provided the coal sales and transportation contracts to the Entergy Plaintiffs from 2002 until the end of 2007.

**69.**

The Entergy Plaintiffs did not request the coal sales and transportation contracts from Louisiana Generating between 2008 and 2012.

**70.**

In 2012, the Entergy Plaintiffs again requested that Louisiana Generating produce the coal sales and transportation contracts for purposes of auditing the invoices submitted by Louisiana Generating.

**71.**

Louisiana Generating refused to comply with the Entergy Plaintiffs' requests, claiming that the coal sales and transportation contracts contained confidentiality provisions.

**72.**

Pursuant to Section 7.2 of the JOPOA, the Entergy Plaintiffs requested that Louisiana Generating attempt in good faith to obtain the consent of the counterparties to the coal sales and transportation contracts to allow the Entergy Plaintiffs to review the contracts.

**73.**

Louisiana Generating did not ask the counterparties to the coal sales and transportation contracts to consent to the Entergy Plaintiffs reviewing the contracts.

**74.**

On November 21, 2012, Louisiana Generating sent a letter to the Entergy Plaintiffs stating that Louisiana Generating would not comply with Section 7.4 of the

JOPOA or Settlement Agreement II, and it would not produce the coal sales and transportation contracts.

**75.**

Since 2012, the Entergy Plaintiffs have repeatedly requested access to, among other things, the coal sales and transportation contracts to conduct additional audits under Section 7.4 of the JOPOA.

**76.**

Louisiana Generating refuses to produce the coal sales and transportation contracts to the Entergy Plaintiffs.

**77.**

As a result of Louisiana Generating's refusal to comply with Sections 7.2 and 7.4 of the JOPOA, the Entergy Plaintiffs have been deprived of their contractual right to audit the millions of dollars in invoices that they pay annually to Louisiana Generating for the purchase and transportation of coal for use at Unit 3 of the Plant.

**78.**

Pursuant to the terms of the JOPOA, the Entergy Plaintiffs are entitled to an order requiring Louisiana Generating to produce all coal supply and transportation agreements pertaining to Unit 3 of the Plant, including railcar leases, as well as any other documents reasonably necessary for the Entergy Plaintiffs to complete their audits.

## FOURTH CLAIM FOR RELIEF

### 79.

The Entergy Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 78.

### 80.

According to the JOPOA and a subsequent February 2007 Agreement, the Entergy Plaintiffs and Louisiana Generating agreed to a coal nomination process, which determines the tonnage of coal purchased for a particular year.

### 81.

In September 2011, the Entergy Plaintiffs provided a 2012 coal nomination of 1,350,000 tons, based on Louisiana Generating's estimated coal deliveries for the remainder of the year, which indicated an estimated end-year coal inventory of 134,278 tons.

### 82.

In December 2011, Louisiana Generating allocated 35% of the Plant's coal deliveries to the Entergy Plaintiffs, resulting in an increase in the Entergy Plaintiffs' actual year-end coal inventory.

### 83.

As a result of Louisiana Generating's allocation, the Entergy Plaintiffs' actual 2011 year-end coal inventory was 204,989 tons, exceeding the estimated year end coal inventory of 134,278, which was based on Louisiana Generating's estimated coal deliveries.

**84.**

In January 2012, the Entergy Plaintiffs attempted to reduce their 2012 coal nomination, but Louisiana Generating refused to allow the reduction.

**85.**

In March 2012, Louisiana Generating notified the Entergy Plaintiffs that their maximum coal inventory for Unit 3 of the Plant was 420,000 tons of coal, representing 14% of the 3 million-ton alleged maximum capacity of the common coal pile.

**86.**

In May of 2012, Louisiana Generating notified the Entergy Plaintiffs that their share of the coal pile was expected to exceed the 420,000 ton limit and that Louisiana Generating was considering cancelling 32,000 tons of coal deliveries in July 2012.

**87.**

In July of 2012, Louisiana Generating cancelled 32,000 tons of coal deliveries and invoiced the Entergy Plaintiffs $168,615.00 for the cancellation along with railcar storage costs associated with the cancelled deliveries.

**88.**

Louisiana Generating refuses to provide the Entergy Plaintiffs with the coal contracts from Buckskin Mining Company.

**89.**

Louisiana Generating refuses to provide documentation or other information indicating the capacity of the shared coal pile was at risk of being exceeded in 2012.

**90.**

Louisiana Generating refuses to provide documentation or other information supporting its claim that the maximum capacity of the shared pile is 3,000,000 tons.

**91.**

Louisiana Generating's refusal to provide the Entergy Plaintiffs with access to the coal contracts with the Buckskin Mining Company, the Plant's 2012 coal nomination with Buckskin Mining Company, and other information related to the coal pile inventory and capacity, violates the JOPOA, including but not limited to the provisions of Section 7.0 of the JOPOA entitled Cooperation and Coordination, the provisions requiring Louisiana Generating to act in good faith and in accordance with good utility practice, and the provisions requiring Louisiana Generating to make no adverse distinction between Unit 3 of the Plant and Units 1 and 2 based on the co-ownership interests of Unit 3.

**92.**

In August of 2012, the Entergy Plaintiffs paid the $168,615 Invoice under protest, as prescribed in the JOPOA.

**93.**

Pursuant to the terms and conditions set forth in the JOPOA and the February 2007 Agreement, the Entergy Plaintiffs are entitled to recover all monies paid under protest by the Entergy Plaintiffs for the cancellation of coal contracts with Buckskin Mining Company and any interest accrued thereon.

## FIFTH CLAIM FOR RELIEF

### 94.

The Entergy Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 93.

### 95.

On July 6, 2009, the Entergy Plaintiffs and Louisiana Generating agreed to Exhibit 1 to the 2005 BCII Unit 3 Audit of Costs Agreement, which addressed the Rail Car Lease Methodology ("Methodology").

### 96.

The purpose of the Methodology was to provide the parties with a reasonable method based on appropriate cost-causation considerations to determine Rail Car charges, and to provide Louisiana Generating with the ability to maximize the utility of its Rail Car fleet.

### 97.

Louisiana Generating does not maintain a dedicated fleet of railcars to serve the Plant.  Rather, Louisiana Generating and its parent, NRG Energy, Inc., maintain a systemwide fleet of railcars that are used to service the Plant and other facilities owned and/or operated by Louisiana Generating and/or NRG.

### 98.

Section III of the Methodology requires Louisiana Generating to true-up the year-end costs to account for the actual usage of the railcars.

**99.**

Section III provides that the year-end true up will account for increases or decreases to the total lease costs for the railcars used to service the Plant.

**100.**

In those years where the actual railcar usage exceeded the expected railcar usage, Louisiana Generating billed the Entergy Plaintiffs based on the actual usage.

**101.**

In those years where the actual railcar usage was less than the expected railcar usage, Louisiana Generating billed the Entergy Plaintiffs based on the expected railcar usage.

**102.**

In 2012, for example, Louisiana Generating overbilled the Entergy Plaintiffs in the amount of $196,242.00 when they refused to adjust the year end billings under the Methodology to account for the fact that fewer railcars were used during the year to service the Plant than had been anticipated at the start of the year.

**103.**

Pursuant to the terms of the Methodology, the Entergy Plaintiffs are entitled to the $196,242.00 that Louisiana Generating improperly charged the Entergy Plaintiffs for rail car usage for 2012.

**SIXTH CLAIM FOR RELIEF**

**104.**

The Entergy Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 93.

**105.**

Section 9.1 of the JOPOA states that Louisiana Generating shall be deemed in default in the following events:

*        *        *

B.    a default by such Co-owner in the performance of any other obligation or duty under this Agreement, which default has not been cured within sixty (60) days after notice has been given by another Co-owner specifying the default, or, if not reasonably curable within such period, good faith efforts to cure same have not commenced during such period and are not being pursued with due diligence.

**106.**

Section 9.2 of the JOPOA states that in order to remedy any default, Louisiana Generating shall:

*        *        *

B.    Fully perform all of its duties and obligation in default or pay the reasonable equivalent in money for service or property provided by the non-defaulting Co-owner(s) resulting from a failure of the defaulting Co-owner to perform all duties and obligations under this Agreement.

**107.**

As a result of the actions detailed in Paragraphs 20 through 99, Louisiana Generating is in default of its obligations under the JOPOA.

**108.**

Pursuant to Section 9.3 of the JOPOA, the Entergy Plaintiffs are entitled to a judgment finding that Louisiana Generating is not entitled to any output or energy from Unit 3 of the Plant, and has not been so entitled since 2012, until it satisfies its monetary obligations to the Entergy Plaintiffs and performs its duties and obligations under the JOPOA:

<u>Loss of Rights</u>:  A Co-owner in default shall have no right to any output of capacity or energy from the Coal Unit 3 or to exercise any other rights under this Agreement until all monetary payments have been made, together with interest, and all duties and obligations have been performed.

**109.**

Louisiana Generating has been in default of its obligations under the JOPOA since 2012.

**110.**

Pursuant to Section 9.3 of the JOPOA, the Entergy Plaintiffs are entitled to a judgment awarding them the value of the energy that Louisiana Generating received from Unit 3 of the Plant from 2012 until the time that Louisiana Generating cures its default under the JOPOA.

**111.**

In addition, pursuant to Section 9.12 of the JOPOA, the Entergy Plaintiffs are entitled to recover consequential damages, attorneys' fees, and collection costs resulting from Louisiana Generating's default.

**<u>JURY DEMAND</u>**

**112.**

The Entergy Plaintiffs pray for a trial by jury on all issues triable by a jury herein.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE,** Entergy Gulf States Louisiana, L.L.C. and Entergy Texas, Inc. pray that this, their Complaint, be deemed good and sufficient, and that after due proceedings are had, there be judgment rendered herein in their favor, and against Louisiana Generating, L.L.C., finding that pursuant to the terms of the JOPOA and associated documents and agreements the Entergy Plaintiffs are entitled to the following:

(1) a declaration that they are not obligated to make any future payments for any costs necessitated by the Consent Judgment; (2) an award of all monies paid under protest by the Entergy Plaintiffs for costs necessitated by the Consent Judgment, including the installation and operation/maintenance of the SNCR on Unit 3, and the cancellation of coal contracts with Buckskin Mining Company; (3) an order requiring Louisiana Generating to produce all coal supply and transportation contracts, including railcar leases, applicable to Unit 3 of the Plant under an appropriate confidentiality agreement; (4) an order finding Louisiana Generating in default under the JOPOA and awarding the Entergy Plaintiffs the value of the output/energy that Louisiana Generating derived from Unit 3 of the Plant since 2012; and (5) for such other general and equitable relief as the nature of this case may permit, including all attorneys' fees, costs, fees, expert fees, consequential damages, and prejudgment interest on the amounts paid by the Entergy Plaintiffs to Louisiana Generating from the date those payments were made.

Respectfully submitted,

By:__/s/ Cory R. Cahn_____
John Braymer, Esq. (#18812)
Cory R. Cahn, Esq. (#22984)
639 Loyola Avenue, 26th Floor
New Orleans, Louisiana 70113
Telephone: (504) 576.5533
Facsimile: (281) 297.5337
Email: CCahn@entergy.com
**ATTORNEYS FOR ENTERGY GULF STATES LOUISIANA, L.L.C. AND ENTERGY TEXAS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 16, 2018, I electronically filed the foregoing pleading using the CM/ECF system, which sent notification of such filing to all attorneys of record.

   /s/ Cory R. Cahn   