UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ENTERGY GULF STATES LOUISIANA,**  **CIVIL ACTION**
**L.L.C. AND ENTERGY TEXAS, INC.**

**VERSUS**  **NO. 14-385-SDD-RLB**

**LOUISIANA GENERATING, L.L.C.**

### ORDER

Before the Court is Entergy Gulf States Louisiana, LLC, and Entergy Texas, Inc.'s (collectively, "Entergy") Motion to Compel Louisiana Generating, L.L.C. ("LaGen"). (R. Doc. 177). The motion is opposed. (R. Doc. 186). Entergy filed a Reply. (R. Doc. 191).

Also before the Court is Entergy's Motion to Compel NRG Energy, Inc. ("NRG"). (R. Doc. 178).[1] The motion is opposed. (R. Doc. 180). Entergy filed a Reply. (R. Doc. 187).

Also before the Court is Entergy's Motion to Compel Cleco Cajun, LLC and Cleo Corporate Holdings, LLC (collectively, "Cleco").[2] (R. Doc. 200). The motion is opposed. (R. Doc. 207). Entergy filed a Reply. (R. Doc. 216).

The instant motions all concern Entergy's renewed efforts to obtain all or part of certain coal and transportation contract information through discovery.

### I.   Background

On November 17, 2017, Entergy filed a First Supplemental and Amending Complaint, which asserts six claims for relief. (R. Doc. 45). The first claim seeks relief regarding the costs

---

[1] NRG is "the former owner (through an intermediate entity) of Louisiana Generating, LLC. . . ." (R. Doc. 180 at 1).
[2] Cleco explains their relationship to LaGen in their opposition: "In February 2019, Cleco Corporate Holdings LLC completed the transaction to acquire NRG South Central Generating LLC (now "South Central Generating"). At the time, South Central Generating was wholly owned by NRG Energy Inc.; and was itself the sole member of LaGen. Therefore, in February 2019, LaGen became an affiliate of Cleco Corporate Holdings LLC. Currently, Cleco Corporate Holdings LLC is the sole member of Cleco Cajun LLC, which is the sole member of South Central Generating LLC, which is the sole member of Louisiana Generating LLC." (R. Doc. 207 at 2).

related to installation and operation of the SNCR. (R. Doc. 45 at 5-9). The second claim alleges that LaGen refused to reimburse Entergy with certain costs associated with the installation of pollution control equipment on Unit 3 of the Big Cajun II power plant. (R. Doc. 45 at 9-14). The third claim seeks a declaration that Entergy is entitled to certain coal supply and transportation contracts under Section 7.2 and 7.4 of the parties' Joint Ownership Participation and Operating Agreement (the "JOPOA") and a December 13, 2002 Settlement Agreement. (R. Doc. 45 at 14-17). The fourth claim seeks relief regarding the cost of the cancellation of certain coal deliveries, including access to certain coal contracts under Section 7.0 of the JOPOA and a subsequent February 2007 Agreement. (R. Doc. 45 at 17-21). More specifically, the fourth claim alleges that in August of 2012, Entergy paid an invoice in the amount of $168,615 in protest, as prescribed by the JOPOA, for the cancellation of coal contracts with Buckskin Mining Company. (R. Doc. 45 at 20). The fifth claim asserts that in violation of an agreed-upon "Rail Car Lease Methodology" (which is part of a 2005 BCII Unit 3 Audit of Costs Agreement) LaGen has overbilled Entergy for annual rail car costs for serving Unit 3 of Big Cajun II where the actual rail car usage is less than the projected utilization rate. (R. Doc. 45 at 21-22). The sixth claim asserts that in light of the foregoing allegations, LaGen continues to be in default under the JOPOA. (R. Doc. 45 at 23-24).

On November 30, 2017, LaGen filed its Affirmative Defenses and Answer. (R. Doc. 49). Among other things, LaGen asserted that Entergy is not entitled to the coal supply and transportation contracts under the JOPOA, the contracts contain highly confidential information, and that LaGen does not have possession, custody, or control of the contracts as they are the contracts of its parent company, NRG or affiliates. (R. Doc. 49 at 24, 31).

2

On January 15, 2018, Entergy filed a motion to enforce the December 13, 2002 settlement agreement, or, alternatively, motion to compel production of the coal supply and transportation contracts. (R. Doc. 70). Entergy sought a ruling that the contracts must be produced in light of the December 13, 2002 Settlement Agreement or the scope of discovery as defined by Rule 26 of the Federal Rules of Civil Procedure. Entergy did not, however, seek relief on the basis that the JOPOA itself compelled such a result.[3]

On July 19, 2018, the Court entered a Protective Order governing the exchange of confidential information in this action. (R. Docs. 126, 127, 179).

On November 5, 2018, the district judge denied Entergy's Motion to Enforce, specifically holding that the December 13, 2002 Settlement Agreement does not require the production of coal supply and transportation contracts in effect from 2012 through 2018. (R. Doc. 137).[4] The district judge referred to the undersigned the resolution of the alternative relief sought, namely an order compelling the production of the coal supply and transportation contracts in response to Entergy's Request for Production No. 16. (R. Doc. 137 at 10-11).

The undersigned then denied Entergy's Motion to Compel Production of Coal Supply and Transportation Contracts. (R. Doc. 142). The Court noted that the third and fourth claims in Entergy's First Supplemental and Amending Complaint seek declarations that coal supply and transportation contracts in effect from 2012 through 2018 must be produced in light of the JOPOA or other agreements between the parties. (R. Doc. 142 at 3). Because the issue of whether these contracts must be produced under the JOPOA or the February 2007 Agreement hinges upon the language of those agreements – not the coal supply and transportation contracts

---

[3] While Entergy's Motion to Enforce references 7.4 of the JOPOA, it does not directly seek relief under the JOPOA.
[4] The district judge has also denied the parties' other motions to enforce settlement agreements or compromises. (R. Doc. 129; R. Doc. 139). The district judge's ruling on Entergy's Motion to Enforce does not specifically address the availability of relief directly under the JOPOA.

3

sought to be obtained – the Court concluded that the contracts are irrelevant to the third and fourth claims in Entergy's First Supplemental and Amending Complaint. (R. Doc. 142 at 3-4). The Court generally held that providing the coal supply and transportation contracts in the discovery process would allow Entergy to circumvent having to prove that it is entitled to those contracts on the merits. (R. Doc. 142 at 4).

On July 17, 2019, Entergy filed into the record a Second Supplemental and Amending Complaint adding "unjust enrichment" as a theory of recovery for its second claim. (R. Doc. 158 at 13-14). The district judge subsequently dismissed Entergy's unjust enrichment claim. (R. Doc. 201). LaGen then filed an Answer to the Second Supplemental and Amending Complaint asserting the defense that the coal supply and transportation contracts are "business records" and do not consist of "accounting records" or "other records" maintained by LaGen that are required to determine the costs of Unit 3, which would subject them to audit obligations under Section 7.4 of the JOPOA. (R. Doc. 205 at 8-9).[5]

In its motion to compel directed at LaGen, Entergy is seeking an order requiring LaGen "(1) to produce its contracts with the Buckskin Mining Company related to the coal cancellation charge, (2) to identify its coal and transportation contracts since 2012, (3) to produce the pages of these coal and transportation contracts showing the parties, the signature date, the length of the contract, and any confidentiality provision, and (4) to generally complete its document production" by a date certain. (R. Doc. 177-1 at 6-7). LaGen opposes this motion, among other reasons, because the coal and transportation contracts are not in its possession, custody, or control, Entergy is seeking to circumvent the Court's denial of Entergy's original motion to

---

[5] LaGen then filed a First Amended and Supplemental Answer and Counterclaims into the record. (R. Doc. 212). Entergy is seeking an order striking and dismissing the counterclaims as improperly filed without leave of court. (R. Doc. 219).

4

obtain the coal and transportation contracts, and the parties have not agreed upon a protocol governing the exchange of electronically stored information. (R. Doc. 186).[6]

In its motion to compel directed at NRG, Entergy is seeking an order requiring NRG "(1) to produce the contract with the Buckskin Mining Company related to the coal cancellation charge, and (2) to produce the pages of coal supply and transportation contracts pursuant to which coal was purchased and/or delivered to Big Cajun II since 2012 showing the parties, the signature date, the length of the contract, and any confidentiality provision." (R. Doc. 178-1 at 5-6).[7] NRG opposes the motion because the information sought would circumvent the Court's denial of Entergy's original motion to obtain the coal and transportation contracts and because the underlying contracts contain confidentiality agreements precluding their production without consent of the contracting parties. (R. Doc. 180).

In its motion to compel directed at Cleco, Entergy is seeking an order requiring Cleco to produce, "for each coal and transportation contract related to the Big Cajun plant since 2012, those pages of the contract showing (1) the parties to the contract, (2) the date the contract was signed, (3) the term or length of the contract, and (4) any confidentiality provisions in it." (R. Doc. 200-1 at 3). Cleco opposes the motion on the basis that the information sought is irrelevant and overly broad, it had no interest in nor relationship to Big Cajun II prior to February 4, 2018 and does not have possession, custody, or control of the contracts sought, and the information sought is confidential. (R. Doc. 207).

---

[6] LaGen filed a separate Motion to Adopt Electronically Stored Information Protocol. (R. Doc. 183). The Court will address the issue of the timing of the production of documents and ESI not specifically discussed in this Order when ruling upon LaGen's motion.

[7] Entergy filed a second motion to compel directed at NRG. (R. Doc. 196). This motion, which will be addressed by separate order, seeks an order compelling the production of other information and documents sought in the Rule 45 subpoena served on NRG.

**II.      Law and Analysis**

    **A.      Legal Standards**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

6

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories. A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

A party must respond or object to interrogatories and requests for production. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

Rule 45 provides that "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

**B.   Buckskin Mining Company's Contract**

Having considered the arguments of the parties, the Court will require the production of Buckskin Mining Company's coal supply and transportation contract. As in its previous motion to compel, Entergy seeks an order compelling LaGen to produce Buckskin Mining Company's

7

coal supply and transportation contract in response to Request for Production No. 16, which provides the following:

> **REQUEST FOR PRODUCTION NO. 16:**
> Please produce all coal supply and transportation contracts, including railcar leases, that were in effect from January 1, 2012 through the current date and that pertain to the purchase and/or shipment of coal for use at Unit 3, including, but not limited to, contracts with the following counterparties: BNSF Railway Company, American Commercial Barge Lines, Calvert City Terminal, and Buckskin Mining Company.

(R. Doc. 177-2 at 21). LaGen objected to this request on the basis that it was premature, and otherwise sought confidential and irrelevant information. (R. Doc. 177-2 at 21-22). LaGen now argues that the contract is not in is possession, custody, or control and that the contract is in the files of NRG Power Marking LLC, an affiliate of NRG. (R. Doc. 186 at 4-5).

Unlike in its previous motion to compel, Entergy is now solely seeking the production of Buckskin Mining Company's coal supply and transportation contract in light of the specific allegations in its fourth claim. In that claim, Entergy asserts that it paid a particular invoice in the amount of $168,615 that was billed by LaGen in light of the cancellation of a coal delivery from Buckskin Mining Company in 2012. This cancellation pertained to a cancellation of 32,000 tons of coal deliveries and the amount invoiced to Entergy included railcar storage costs associated with the cancelled deliveries. Entergy's claim still arises under the JOPOA but challenges the invoice pertaining to the Buckskin Mining Company's cancellation. Although not clear from the briefing, it is reasonable that provisions of the Buckskin Mining Company's contract with LaGen, and related documentation, would govern how the costs imposed on Entergy were calculated.

The Court also notes that LaGen's general arguments regarding confidentiality and competitive disadvantage are greatly diminished with respect to this particular contract. First,

8

the identity of the third party is known. Second, there is no dispute that the contract was in effect during the relevant time period, so the duration (in part) is also known. Third, the specific amount of coal at issue has not been controverted. Finally, the specific costs purportedly associated with the cancelled delivery is not disputed. Counsel for NRG has also informed the Court that Buckskin has indicated that it would consider disclosure of the contract if so ordered by the Court and subject to an appropriate protective order. (R. Doc. 180 at 3).

Considering Entergy's renewed arguments limited to Buckskin Mining Company's coal supply and transportation contract, the Court modifies its previous discovery order to hold that this particular contract is relevant to the damages sought in Entergy's fourth claim. The Court acknowledges that Buckskin Mining Company's coal supply and transportation contract is also subject to Entergy's broader claims that it is entitled to the coal supply and transportation contracts in light of its audit rights under the JOPOA or the February 2007 Agreement. But given the specific allegations in the fourth claim with respect to the cancellation of coal deliveries under Buckskin Mining Company's coal supply and transportation contract, the Court finds that the underlying contract is discoverable notwithstanding any particular audit rights.

Given that LaGen has denied possession, custody, or control of the contract, the Court will turn to whether Entergy is entitled to the contract pursuant to the subpoena served on NRG. Buckskin Mining Company's coal supply and transportation contract falls within the scope of Request No. 1 of the Rule 45 subpoena served on NRG. (R. Doc. 178-2 at 6). NRG opposes the production of Buckskin Mining Company's coal supply and transportation contract (as does LaGen) on the basis that the Court has already denied production of that document and the document is subject to a confidentiality provision. (R. Doc. 180 at 2-3; *see* R. Doc. 178-3 at 5-6). NRG states, however, that in 2017 it obtained a preliminary indication from Buckskin Mining

Company that it would consider allowing disclosure of the contract if so ordered by the Court. (R. Doc. 180 at 3). NRG also states that it will seek final confirmation from Buckskin Mining Company if ordered to produce the contract. (R. Doc. 180 at 3-4).

The Court has reviewed the language of the confidentiality agreement in Buckskin Mining Company's coal supply and transportation contract as detailed by NRG. (*See* R. Doc. 180 at 3). The Court finds no basis for precluding discovery of the contract in light of this confidentiality provision. Foremost, the Court has put in place an appropriate protective order governing the exchange of confidential information, and the contract will be subject to the protective order. The Court also notes that the contract's own confidentiality provision provides that it may be produced if required by court order. While NRG and/or NRG Power Marking LLC may have a contractual duty to alert Buckskin Mining Company of this order, the confidentiality agreement does not preclude discovery of the underlying contract pursuant to Court order.

Based on the foregoing, the Court will require NRG to produce Buckskin Mining Company's coal supply and transportation contract within **7 days** of the date of this Order. The contract must be produced as "confidential" pursuant to the Court's protective order.

### C.     Other Coal Supply and Production Contract Information

Entergy is also seeking an order compelling LaGen to identify certain information with respect to the remaining coal supply and transportation contracts in response to Interrogatory No. 8, which provides the following:

> **INTERROGATORY NO. 8:**
> Please identify every coal supply and transportation contract, including railcar leases, that was in effect from January 1, 2012, through the current date, which pertains to the purchase and/or shipment of coal for use at Unit 3 of Big Cajun II.

(R. Doc. 177-2 at 8). LaGen objected to this interrogatory on the basis that it was premature, and otherwise sought confidential and irrelevant information. (R. Doc. 177-2 at 8-9). Entergy is seeking the same information from NRG and Cleco pursuant to the Rule 45 subpoenas served on those entities. (R. Doc. 178-2 at 6; R. Doc. 200-3 at 2; R. Doc. 200-4 at 2).[8] NRG and Cleco objected to this request based upon the Court's previous order denying Entergy's motion to compel with respect to all coal supply and transportation contracts. (R. Doc. 178-3 at 5-6; R. Doc. 200-5 at 5; 200-6 at 5-6). Cleco also objected on the basis of lack of possession, custody, or control, relevance, and confidentiality. (R. Doc. 200-5 at 5-6; 200-6 at 5-7).

Entergy argues that it is entitled to the foregoing information because it is relevant to LaGen's defense that the contracts, and information pertaining to the contracts, are confidential. To be clear, the Court did not deny Entergy's previous motion to compel production of the contracts because the information sought is confidential or because LaGen has raised the defense of confidentiality. Entergy's third claim seeks a declaration that the coal and transportation contracts sought must be produced under the JOPOA. The Court denied Entergy's previous motion to compel because the contracts themselves are irrelevant for determining the parties' rights and duties under the JOPOA.

Entergy has still not raised any convincing argument that the sought information with respect to the coal and transportation contracts is relevant for a determination of the parties' rights and duties under the JOPOA. It is further unclear how identification of the parties to the contracts, the dates of the contracts, and the terms or lengths of the contracts is relevant to the discrete issue of LaGen's confidentiality defense.

---

[8] Entergy appears to seek this information from NRG pursuant to the request for production of all coal and supply transportation contacts as detailed in Request No. 1 of the Rule 45 subpoena. Entergy specifically seeks this information from Cleco.

The Court acknowledges, however, that LaGen has raised confidentiality as an affirmative defense. While the Court finds it doubtful that any confidentiality provisions in the coal supply and transportation contracts sought could preclude the Court from ordering their production (if justified under the JOPOA audit rights or some other agreement between the parties), Entergy is entitled to relevant information with respect to that defense. Accordingly, to the extent LaGen, NRG, or Cleco have in their possession, custody, or control any of the coal and transportation contracts sought, these entities must (1) identify the number of such contracts in their possession, custody, or control, and (2) produce a copy of any confidentiality provisions for each of the identified contracts within **7 days** of the date of this Order. LaGen, NRG, and Cleco need not, at this time, produce the other information sought, namely the parties to the contracts, the date the contracts were signed, or the term or length of the contracts. As previously stated, allowing discovery with respect to all aspects of the contracts prior to a determination of whether Entergy is entitled to the contracts in the first place would undermine the district judge's authority to decide the merits of Entergy's third claim.[9]

### III.   Conclusion

Based on the foregoing,

**IT IS ORDERED** that Entergy's Motion to Compel LaGen (R. Doc. 177), Motion to Compel NRG (R. Doc. 178), and Motion to Compel Cleco (R. Doc. 200) are **GRANTED IN PART and DENIED IN PART**. The parties shall bear their own costs.

---

[9] This order compels the production of information relevant to LaGen's confidentiality defense. There is no order bifurcating the issues to be tried in this action pursuant to Rule 42(b). It is unclear whether Entergy will file a motion for partial summary judgment with respect to the parties' rights and duties under the JOPOA. The undersigned takes no position with respect to whether the production of any coal supply and transportation contracts (or any additional information pertaining those contracts) for *in camera* inspection is appropriate for a ruling on any such motion for partial summary judgment.

**IT IS FURTHER ORDERED** that NRG must produce Buckskin Mining Company's coal supply and transportation contract within **7 days** of the date of this Order.

**IT IS FURTHER ORDERED** that LaGen, NRG, and Cleco shall identify the number of coal supply and transportation contract, including railcar leases, that was in effect from January 1, 2012, through the current date, which pertains to the purchase and/or shipment of coal for use at Unit 3 of Big Cajun II, in their possession, custody, or control, and for each identified contract, produce an exact copy of any confidentiality provision, within **14 days** of the date of this Order. To the extent necessary, the names of any parties to the contract may be redacted from the confidentiality provisions provided.

Signed in Baton Rouge, Louisiana, on May 5, 2020.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**