**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**ENTERGY GULF STATES LOUISIANA, L.L.C. AND ENTERGY TEXAS, INC.** **CIVIL ACTION**

**VERSUS** **NO. 14-385-SDD-RLB**

**LOUISIANA GENERATING, L.L.C.**

**ORDER**

Before the Court is Entergy Gulf States Louisiana, LLC, and Entergy Texas, Inc.'s (collectively, "Entergy") Motion to Compel Louisiana Generating, L.L.C. ("LaGen") and NRG Energy, Inc. ("NRG") [1] to Produce Relevant Settlement Negotiation Documents ("Motion to Compel Settlement Documents"). (R. Doc. 285) (sealed). The motion is opposed. (R. Doc. 288) (sealed). Entergy filed a Reply. (R. Doc. 291) (sealed).

Also before the Court is Entergy's Motion to Compel LaGen and NRG to Produce ESI for Mauricio Gutierrez ("Motion to Compel Gutierrez ESI"). (R. Doc. 296) (sealed). The motion is opposed. (R. Doc. 299). Entergy filed a Reply. (R. Doc. 309).

Also before the Court is LaGen and NRG's Substitute Motion for Protective Order ("Motion for Protective Order"). (R. Doc. 312).[2] The motion is opposed. (R. Doc. 318) (sealed).

Entergy has supplemented its Motion to Compel Gutierrez ESI and Opposition to LaGen's and NRG's Motion for Protective Order. (R. Doc. 314) (sealed).

---

[1] NRG is "the former owner (through an intermediate entity) of Louisiana Generating, LLC. . . ." (R. Doc. 180 at 1).

[2] LaGen and NRG substituted their original Motion for Protective Order to add a "Rule 37.1 Certificate" (R. Doc. 312 at 6) to their motion. There is no Rule 37.1 in either the Federal Rules of Civil Procedure or the Court's Local Rules. There are certification requirements under Rule 37 as it pertains to motions to compel or for sanctions. Given LaGen and NRG filed a Motion for Protective Order, the Court will interpret the "Rule 37.1 Certification" as a certification made pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure.

## I. Background

### A. Relevant Factual and Procedural History

The instant action concerns Entergy's claims for recovery of costs in accordance with the terms and conditions of a Joint Ownership Participation and Operating Agreement (the "JOPOA"). (R. Doc. 158). Among other things, Entergy seeks recovery of costs related to the installation and operation of a Selective Non-Catalytic Reduction device ("SNCR") on Unit 3 of the Big Cajun II Power Plant (the "Plant"), which Entergy co-owns with LaGen.

Entergy alleges that in 2005 and 2006, the United States Environmental Protection Agency ("EPA") issued notices of violation ("NOVs") to LaGen, alleging that Units 1 and 2 of the Plant violated various provisions of the Clean Air Act, but made no such allegations with respect to Unit 3 of the Plant. (R. Doc. 158 at 3). On February 11, 2009, the EPA commenced an action alleging the same violations contained in the NOVs with respect to Units 1 and 2 of the Plant. *See EPA v. Louisiana Generating, LLC*, Civ. Act. No. 09-100-JJB-RLB, ECF No. 1 (M.D. La.). On February 19, 2010. the Louisiana Department for Environmental Qualify ("LDEQ") intervened and filed its own Complaint. *Id.*, ECF No. 60. On November 20, 2012, the EPA, LDEQ, and LaGen sought entry of a Consent Decree. *Id.*, ECF No. 419. On March 5, 2013, the district judge entered into the record the Consent Decree, which includes a provision requiring the installation of an SNCR on Unit 3. *Id.*, ECF No. 427.

In this lawsuit, Entergy alleges that LaGen's decision to install and operate an SNCR on Unit 3 of the Plant exceeded the limited scope of its agency authority provided by the JOPOA. (R. Doc. 158 at 8). Entergy alleges that LaGen's decision to install and operate an SNCR on Unit 3 of the Plant solely was made for its "own benefit to resolve the NOVs and Complaints filed by the EPA and LDEQ relating to Units 1 and 2, and to mitigate the damages being sought against it

by those agencies." (R. Doc. 158 at 8). Entergy alleges that LaGen had no legal or commercial reason to install the SCNR on Unit 3 of the Plant, and had originally decided against doing so based on the results of a series of tests to determine the feasibility of an SCNR on Unit 3 of the Plant. (R. Doc. 158 at 8). Entergy represents that the Consent Decree's requirement that an SCNR be installed on Unit 3, and that Entergy would be billed for 42% of the costs (approximately $10 million), was first revealed to Entergy on February 12, 2013, at a Management Advisory Meeting. (R. Doc. 285-1 at 3-4; *See* R. Doc. 285-8).

On July 19, 2018, the Court entered a Protective Order governing the exchange of confidential information in this action. (R. Docs. 126, 127, 179).

On May 5, 2020, the Court issued an order with respect to the adoption of an electronically stored information protocol ("ESI Protocol"). (R. Doc. 226). The Court required the parties to file joint status reports detailing their efforts to complete discovery. (R. Doc. 226 at 6-7). The parties executed the final ESI Protocol in accordance with the Court's order on May 19, 2020. (R. Doc. 237-1). The parties filed joint status reports on May 20, 2020 (R. Doc. 237), June 2, 2020 (R. Doc. 240), and June 15, 2020 (R. Doc. 252). The Court held a conference to discuss these joint status reports on June 24, 2020. (R. Doc. 259). On August 5, 2020, the parties filed a fourth joint status report outlining LaGen's efforts to collect and produce responsive ESI, as well as various issues raised by Entergy regarding deficiencies in this efforts. (R. Doc. 282).

The instant motions followed.

**B. Entergy's Motion to Compel Settlement Documents**

Entergy filed its Motion to Compel Settlement Documents on August 17, 2020. (R. Doc. 285). Through this motion, Entergy seeks an order requiring LaGen and NRG (1) to diligently search for all "settlement communications" with the LDEQ, EPA, and/or U.S. Department of

Justice ("DOJ") regarding the NOVs and Consent Decree, (2) to certify to the Court that they undertook such efforts, (3) to produce in unredacted format the documents received from the DOJ in response to Entergy's FOIA request (R. Doc. 285-14), and (4) to withdraw all objections they have made to the DOJ regarding the unredacted production of documents to Entergy on the topics above. (R. Doc. 285-2). Entergy asserts that it sought the "settlement communications" through the following requests for written discovery: Request for Production Nos. 16 and 17 from Entergy's Fifth Set of Requests for Production; Request for Production Nos. 7, 8, 11, and 12 from Entergy's Sixth Set of Requests for Production; Request for Production Nos. 7, 9, 10, 11, and 18 from Entergy's Seventh Set of Requests for Production; and Request No. 12 in a subpoena served on NRG. (R. Doc. 285-1 at 5-10).

In support of its motion, Entergy represents that the DOJ "produced many documents between itself and LaGen on settlement discussions that were *not* produced by LaGen," including correspondence with (1) LaGen's general counsel, Gordon Polozola, (2) Baker Botts lawyer Bill Bumpers, (3) Baker Botts lawyer Kent Mayo, (4) LaGen CEO, Jennifer Vosburg, and (5) LaGen's director of environmental business, Verne Shortell. (R. Doc. 285-1 at 10-11). Accordingly, Entergy seeks an order requiring LaGen and NRG to thoroughly search for all responsive settlement communications in their possession for the foregoing five individuals, as well as any other individuals who participated in settlement negotiations, for the two meaningful periods of settlement discussions: 2008 and August-November of 2012. (R. Doc. 285-1 at 13-14).

In opposition, LaGen and NRG argue that the motion to compel should be denied because Entergy failed to conduct a Rule 37(a) conference prior to filing the motion and otherwise seeks to compel responses to discovery requests to which neither LaGen nor NRG

have objected. (R. Doc. 288 at 1-2, 5-9). LaGen and NRG represent that they have been and are continuing to work diligently to search for and produce all non-privileged documents requested by Entergy in the motion to compel. (R. Doc. 288 at 1, 10-18). LaGen and NRG also represent that they have produced unredacted versions of the documents produced by the DOJ. (R. Doc. 288 at 3-4, 16). Finally, LaGen and NRG seek an award of costs and fees for Entergy's "seemingly intentional failure to abide by FRCP 37 and/or ESI Protocol governing this matter and Entergy's continued failure to engage in the discovery process in a reasonable and cooperative manner as required by Federal Rule of Civil Procedure 1." (R. Doc. 288 at 4, 18).

In reply, Entergy highlights that it raised the issue that LaGen had not produced the sought settlement negotiation documents between LaGen and the government entities in the second, third, and fourth joint status reports. (R. Doc. 291 at 2-4). Entergy asserts that these joint status reports provide proof that the parties "engaged in repeated discussions on these topics to no avail." (R. Doc. 291 at 4).

**C. Entergy's Motion to Compel Gutierrez ESI**

Entergy filed its Motion to Compel Gutierrez ESI on November 10, 2020. (R. Doc. 296). Through this motion, Entergy more specifically seeks an order requiring LaGen and Entergy to run additional proposed ESI search terms and date ranges to include Mr. Gutierrez as a custodian. According to Entergy, Mr. Gutierrez was NRG's Chief Operating Officer ("COO") from July 2010 to December 2015 based on a social media posting. (R. Doc. 296-1 at 6; *see* R. Doc. 296-11). Entergy argues that Mr. Gutierrez should be included as a custodian on the searches run by NRG and LaGen because he "was a critical decisionmaker when it came to agreeing to install a SNCR on Unit 3 to resolve the Notices of Violation for Units 1 and 2, as well as the decision to allocate 42% of those costs to Entergy." (R. Doc. 296-1 at 6). Entergy

submits email correspondence and other documentation demonstrating that Mr. Gutierrez received and approved the settlement agreement with the EPA. (R. Doc. 296-1 at 6-9; *see* R. Doc. 296-12 through R. Doc. 296-17).

As early as July of 2020, counsel for Entergy requested the addition of Mr. Gutierrez (as well as the individuals David Crane and Kirkland Andrews) as custodians for the ESI searches, and counsel for LaGen stated that LaGen was open to investigating the addition of these custodians to the pertinent searches. (R. Doc. 296-3 at 1). Counsel for Entergy then sent proposed search modifications to four of LaGen's ESI searches, as well as proposing a new fifth search. (R. Doc. 296-3 at 1, 4-5).[3] Entergy asserts that it has met the requirements of Steps 5 and 6 of the ESI Protocol's steps for the collection of documents with the use of search terms, which provide that Entergy may proposed additional search terms or custodians and may seek relief from the Court with respect to such requests if an agreement cannot be met despite good faith efforts. (R. Doc. 296-1 at 9; *see* R. Doc. 237-1 at 6).

Entergy argues that it has met its burden of demonstrating that Mr. Gutierrez's ESI likely includes evidence relevant to the claims or defenses in the case, and that Mr. Gutierrez is likely to have unique information not available through the other designated custodians. (R. Doc. 296-1 at 10). Based on the documents obtained in discovery, Entergy argues that "Mr. Gutierrez not only (1) was kept abreast of settlement talks with the government, but also (2) was the ultimate decisionmaker when it came to accepting the government's terms in the Consent Decree and (3) was intimately involved in resolving LaGen/NRG's decision on how to allocate the costs of funding the settlement." (R. Doc. 296-1 at 10). Entergy further argues that Mr. Gutierrez's "files

[3] It is unclear whether and to what extent LaGen and NRG have agreed to run these modified searches or to include the additional custodians David Crane and Kirkland Andrews.

are likely to show unique documents and communications because *he* was the final decision maker on the very issues at hand." (R. Doc. 296-1 at 10-11).

In opposing the motion, LaGen and NRG represent that Mr. Gutierrez was in fact NRG's Chief Financial Officer ("CFO") from July 2010 to December 2015, and in that position "his involvement with the issues in this case was primarily from a financial perspective rather than an environmental, litigation, or corporate policy perspective." (R. Doc. 299 at 1-2). LaGen and NRG argue that Entergy's motion should be denied because it has not met its burden of proving that "LaGen's or NRG's searches were manifestly unreasonable or specifically deficient." (R. Doc. 299 at 2). LaGen and NRG argue that they are in the best position to evaluate the procedures, methodologies, and technologies for searching and producing their ESI, including identifying and selecting custodians.[4] LaGen and NRG argue that while Mr. Gutierrez provided his consent to the settlement, "Jennifer Vosburg (President of LaGen), Verne Shortell (Vice-President of NRG Environmental Division), John Klumpyan (Vice-President of NRG – Engineering and responsible for Clean Air Act compliance), and Gordon Polozola (General Counsel of LaGen) were the principal representatives of LaGen and NRG involved in evaluating and negotiating a resolution of the Notices of Violation and related litigation involving EPA and LDEQ." (R. Doc. 299 at 12-13). Accordingly, LaGen and NRG assert that "[a]ny communications to or from Gutierrez and these individuals would have been picked up in LaGen/NRG searches." (R. Doc. 299 at 13). LaGen and NRG also assert "it appears that, to a

---

[4] The custodians identified by LaGen and NRG are as follows: " (1) Jennifer Vosburg: President, LaGen; (2) Gordon Polozola: General Counsel, LaGen; (3) John Klumpyan: Vice-President of Engineering, NRG Energy Inc.; (4) Andy Davis: Director of Business Operations, LaGen; (5) Gary Ellender: Regional Environmental Manager, LaGen; (6) Phil Fontenot: Administrative and Business Services Manager, Big Cajun II, LaGen; (7) David Hinchee: Regional Controller, LaGen; (8) Suzanne Jones: Senior Accountant, NRG; (9) Michael Profitt: NRG Project Manager for implementation and construction of Consent Decree, including SNCR and other BC II projects; (10) Robert Roland: Director, Business Operations, LaGen; (11) Albert Scerbo: Vice President Controller, Business, NRG Energy Inc.; and (12) Verne Shortell: Vice-President, Environmental, NRG Energy Inc." (R. Doc. 299 at 11-12).

significant extent, communications with Mr. Gutierrez on the relevant topics were oral." (R. Doc. 299 at 13). In sum, LaGen and NRG argue that "ESI searches for Gutierrez are not necessary and are unlikely to yield significant additional information, especially as compared to the burden and added expenses of doing so." (R. Doc. 299 at 15-16).

In reply, Entergy submits a copy of NRG's Form 10-K in support of its position that Mr. Gutierrez was, in fact, NRG's COO (not its CFO) from July 2010 to December 2015. (R. Doc. 309 at 1-2; *see* R. Doc. 309-1). Entergy further argues it has demonstrated that Mr. Gutierrez was "intimately involved in the underlying issues in his position as NRG's COO during the relevant timeframe," and adding him as a custodian "is likely to yield a unique tranche of information due to his critical role in the decisions at issue in this case." (R. Doc. 309 at 3-5). Entergy has also supplemented its motion with deposition testimony of Verne Shortell from another action confirming that Mr. Gutierrez was one of the principal decisionmakers with respect to the Consent Decree. (R. Doc. 314).

**D. LaGen and NRG's Motion for Protective Order**

LaGen and NRG filed their Motion for Protective Order on December 14, 2020. (R. Doc. 312). Through this motion, LaGen and NRG seek an order protecting them from having to produce Mr. Gutierrez for his noticed deposition or, alternatively, until all other depositions are completed, and Entergy can establish a continued need for the deposition. In support of this motion, LaGen and NRG again assert that Mr. Gutierrez was NRG's CFO at the relevant times in this case and not directly involved in any of the settlement negotiations at issue. (R. Doc. 312-1 at 2). LaGen and NRG argue that a protective order should be issued because Mr. Gutierrez was a "high level executive" removed from LaGen's operation of the Plant and not directly involved

in the settlement negotiations without any unique knowledge that cannot be obtained through other less intrusive means. (R. Doc. 312-1 at 3-9).

In opposition, Entergy argues that despite having produced documents demonstrating that Mr. Gutierrez "was the key decision-maker on NRG's determination to install a SNCR on Unit 3 and wrongfully pass millions of dollars in consent-decree costs on to Entergy in order to resolve the NOVs for Units 1 and 2," LaGen and NRG have taken "progressively more intense steps to insulate Mr. Gutierrez from the discovery process." (R. Doc. 318 at 4-5). Reiterating the discovery highlighted in its Motion to Compel Gutierrez ESI, Entergy argues that a protective order precluding Mr. Gutierrez's deposition is unwarranted. (R. Doc. 318 at 5-15; *see* R. Doc. 314).

## II. Law and Analysis

### A. General Legal Standards for Discovery

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii)

the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

**B. Entergy's Motion to Compel Settlement Documents**

Rule 37(a)(1) of the Federal Rules of Civil Procedure provides that any motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). In addition, the Court's Scheduling Order informed the parties that "[a]ny motions filed regarding discovery must be accompanied by a certificate of counsel for the moving party, stating that counsel have conferred in person or by telephone for purposes of amicably resolving the issues and stating why they are unable to agree or stating that opposing counsel has refused to so confer after reasonable notice." (R. Doc. 172 at 2).

The record indicates that Entergy raised the issue of the production of the settlement negotiation documents sought – with increasingly more specificity – in the joint status reports submitted on June 2, 2020 (R. Doc. 240), June 15, 2020 (R. Doc. 252), and August 5, 2020 (R. Doc. 282). It is unclear, however, whether and to what extent the parties actually engaged in good faith discussions with respect to these issues. The record also indicates that on July 27,

2020, Entergy sought to schedule "a discovery conference for August 6 or 12 to make one last effort to resolve [the parties'] discovery issues." (R. Doc. 288-1). On August 7, 2020, Entergy sought to move the "meeting to the following week." (R. Doc. 288-2). Entergy filed its motion to compel on August 13, 2020 prior to holding the discovery conference it requested.

It appears that the parties have engaged in various discussions with respect to the collection and production of the settlement negotiation documents at issue, although it is unclear when those discussions were made and whether those discussions were made in good faith. Entergy's Rule 37(a)(1) certificate generally states that its counsel conferred with defense counsel "in a good-faith attempt to resolve the matters identified in this motion, but the parties were unable to resolve these items." (R. Doc. 285-1). This broad certification does not state, as required by the Scheduling Order, that counsel have conferred in person or by telephone for purposes of amicably resolving the issues and why they were unable to agree. (*See* R. Doc. 172 at 2).

The specific issues raised in the instant motion to compel should have first been addressed at a discovery conference. LaGen and NRG represent that they do not object to the production of the unredacted versions of documents obtained from Entergy from the DOJ, and this issue was not discussed prior to the filing of the motion. (R. Doc 288 at 16). Similarly, LaGen and NRG represent that they had prepared to discuss the issue of potential conflicts raised by the possession of certain documents by the law firm Baker Botts. (R. Doc. 288 at 17-18). LaGen and NRG also represent that Entergy did not propose any modified search terms under the ESI Protocol until August 26, 2020, after it filed the instant motion to compel. (R. Doc. 288 at 12).

LaGen and NRG represent that they do not object to the discovery sought, and "have been and are continuing to produce non-privileged information sought by all the requests included in Entergy's motion to compel." (R. Doc. 288 at 2).[5] LaGen and NRG assert that while they have been diligent in collecting and producing documents, the production have been slowed by the discovery process and ESI Protocol, which requires them to identify which portions of any identified ESI are responsive and privileged, and to provide any appropriate redactions and privilege logs. (R. Doc. 288 at 14-15). LaGen and NRG also assert that they have continued to conduct "diligent and thorough searches," and have taken the steps to run revised searches based on those received from Entergy on August 26, 2020. (R. Doc. 288 at 17-19). LaGen and NRG represent that, with the exception of the more recently obtained revised search terms, they "anticipate that they will complete their review and produce all remaining responsive and non-privileged documents originating from direct collections and all ESI searches performed in July 2020 or earlier to Entergy on or before October 15, 2020, and will provide supplemental written responses to all eight (8) sets of written discovery by same date." (R. Doc. 288 at 19).

The problem appears to be that Entergy is now seeking the Court to order LaGen and NRG to produce documents without first proceeding through the requirements of the ESI Protocol. In its reply, Entergy argues that the documents sought are "Direct Collection" documents under the ESI Protocol, and, therefore, "there is no need for word searches, and there is no excuse for LaGen's failure to produce these documents." (R. 291 at 5). The problem with that position is that the ESI Protocol provides the mechanism for challenging a determination of

---

[5] In fact, LaGen and NRG's responses to the discovery requests at issue contain objections other than privilege, including assertions of lack of relevance and proportionality. (*See* R. Doc. 285 at 5-10). It appears that LaGen has waived those objections in light of the entry of the ESI Protocol.

whether documents are to be categorized as "Direct Collection" documents for the purposes of collection and production:

> After the receipt of any discovery requests, the parties agree to confer in good faith regarding each party's preliminary determination on what categories of Documents or other ESI, if any, will be designated as Direct Collection Documents. Examples of such categories could include ESI that is already segregated such that an electronic search is not necessary, and ESI that is kept in such a manner that the use of search terms would not be effective or would not be the most efficient manner to locate and produce discoverable ESI. If the parties are not able to reach agreement regarding what, if any, categories of ESI shall be collected and reviewed for potential production without the application of search terms, the parties may seek a Court order to resolve the same.

(R. Doc. 237-1 at 3). The most recent joint status reports provide that LaGen designated as "Direct Collection" documents "sealed and unsealed pleadings, depositions, and expert reports" in the EPA action. (R. Doc. 282 at 3). Entergy asserts in the joint status report that "LaGen continues to withhold emails, communications, presentations and other documents regarding its decision to install a SNCR on Unit 3, which was made between August 1, 2012, and November 20, 2012." (R. Doc. 282 at 8). There is no evidence, however, that Entergy sought to confer, in good faith, regarding the classification of settlement documents as "Direct Collection" documents or otherwise sought to modify the search terms used in obtaining the information sought.[6]

This brings the issue full circle to Entergy's failure to satisfy the requirements of Rule 37(a)(1). That said, the settlement documents obtained from the DOJ by Entergy that have not been produced by LaGen or NRG highlight the inefficiency of the search terms and connectors used by LaGen and NRG, or otherwise supports the conclusion that the settlement documents

[6] In contrast, Entergy has appeared to follow these procedures prior to filing its Motion to Compel Gutierrez ESI. In addition, that motion includes a Rule 37(a)(1) certificate providing that counsel specifically conferred on October 30, 2020, ten days prior to the filing of the motion. (R. Doc. 296-1).

should be designated as "Direct Collection" documents.[7] But these issues are for the parties to work out in good faith – pursuant to both Rule 37(a)(1) and the ESI Protocol – prior to the filing of a motion with the Court. While the Court will deny the instant motion with leave to refile, it will not award any costs or expenses because the motion was substantially justified given the record. *See* Fed. R. Civ. P. 37(a)(5).

Finally, it is unclear whether and to what extent any of the issues in this motion to compel have been rendered moot in light of further discussions between the parties, Entergy's proposal of additional search terms, or supplemental productions by LaGen and NRG. Furthermore, the Court has issued an order granting a joint motion filed by the parties seeking various extensions, extending, among other things, the non-expert discovery deadline from November 16, 2020 to February 16, 2021. (R. Doc. 293). This extension provides the parties additional time to attempt to resolve the issues raised in the instant motion in good faith prior to the close of discovery.

**C. Entergy's Motion to Compel Gutierrez ESI**

A "responding party is generally entitled to select the custodians most likely to possess responsive information." *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No.13-373, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018) (citing *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-0293, 2017 WL 2305398, at * 2 (S.D.N.Y. May 18, 2017)).[8] "Unless that choice is manifestly unreasonable or the requesting party demonstrates that the resulting

[7] It appears that an efficient collection of non-privileged communications involving government entities would include searches for ESI between representatives of NRG and LaGen and representatives of the EPA, LDEQ, and DOJ. Such communications would not need to be reviewed for privilege as they involve third parties.

[8] District courts within the Fifth Circuit have acknowledged that the "Sedona Principles and related Sedona commentaries are the leading authorities on electronic document retrieval and production." *Firefighters' Ret. Sys*, 2018 WL 276941, at *4 n. 37 (*Matrix Partners VIII, LLP v. Nat. Res. Recovery, Inc.*, No. 08-547, 2009 WL 10677430, at *4 n.3 (E.D. Tex. June 5, 2009); *see generally* The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Production*, 19 Sedona Conf. J. 1 (2018).

production is deficient, the court should play no role in dictating the design of the search, whether in choosing search tools, selecting search terms, or . . . designating custodians." *Mortgage Resolution*, 2017 WL 2305398, at * 2. Further, "a party seeking to compel another party to search the files of additional custodians bears the burden of establishing the relevance of the documents it seeks from those custodians." *Id.* (quoting *Lightsquared Inc. v. Deere & Co.*, No. 13 8157, 2015 WL 8675377, at *5 (S.D.N.Y. Dec. 10, 2015)).

Here, Entergy has demonstrated that court intervention is appropriate for the purposes of adding Mr. Gutierrez as an additional custodian. While the custodians chosen by LaGen and NRG are generally entitled to deference, the ESI Protocol agreed upon by the parties and approved by the Court provides a procedure for the non-producing party to suggest new custodians. Entergy has put forth uncontroverted documentation establishing that Mr. Gutierrez was NRG's COO from July 2010 to December 2015, and a key decision-maker on NRG's determination to install the SNCR on Unit 3. LaGen and NRG have not submitted any evidence substantiating their continued assertion that Mr. Gutierrez was NRG's CFO during the time in question. Regardless of his official title, the Court is satisfied that including Mr. Gutierrez as a custodian may lead to unique relevant evidence not already produced, namely communications between Mr. Gutierrez and any other individuals not identified by LaGen and NRG as custodians.

The addition of Mr. Gutierrez as a custodian will not lead to disproportionate costs or burdens imposed on the producing parties. Indeed, LaGen and NRG's argument that Mr. Gutierrez is unlikely to have additional non-duplicative documents suggests that very few (if any) additional non-duplicative documents will need to be reviewed and produced. Given the

amount in controversy and the importance of the discovery, the additional limited searches of the files of Mr. Gutierrez will not be disproportionate to the needs of this case.

LaGen and NRG's reliance on *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No.13-373, 2018 WL 276941 (M.D. La. Jan. 3, 2018) is misplaced. In that action, the plaintiffs sought permission to email everyone employed by the corporate defendant to ask whether they had knowledge relevant to the litigation. *Id*. at *5. The Court found the request "simply unreasonable," noting that the plaintiffs failed "to identify or explain the necessity of any additional custodians or search terms." *Id*. at *5. In contrast, Entergy has set forth specific documentary information obtained in discovery demonstrating that the addition of Mr. Gutierrez as a single additional custodian has a high probability of leading to unique and relevant information.

The specific relief sought by Entergy, however, is unclear. In its proposed order, Entergy asks the Court to require LaGen and NRG to run "the ESI search terms and date ranges set forth in Exhibit 1 to Entergy's Memorandum in Support over the files and emails of Mauricio Gutierrez . . . ." (R. Doc. 296-2). The referenced exhibit contains handwritten modified searches for four searches created and run by LaGen and NRG, as well as a fifth search proposed by Entergy. (R. Doc. 296-3 at 4-5). It is unclear whether and to what extent LaGen and NRG have agreed to run the modified searches including the addition of any other proposed custodians. For the purposes of this Order, the Court will only require LaGen and NRG to run additional searches for the limited date ranges proposed by Entergy with Mr. Gutierrez as a custodian, using the underlying search terms and connectors to which LaGen and NRG have agreed upon for other custodians.[9] The Court will grant the motion to compel to the extent consistent with the foregoing.

[9] Entergy has presented no arguments in support of a finding that any modification of the actual search terms used by LaGen and NRG (or the inclusion of any custodians other than Mr. Gutierrez) is warranted.

**D. LaGen and NRG's Motion for Protective Order**

Rule 30 of the Federal Rules of Civil Procedure governs depositions by oral examination. "A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1). "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). "[A] party seeking a protective order to prevent or postpone a deposition must show good cause and the specific need for protection." *Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002)(citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)).

LaGen and NRG seek an order protecting them "from having to produce [Mr. Gutierrez], the current Chief Executive Officer of NRG, for a deposition in this matter, or alternatively, protecting LaGen and/or NRG from having to produce Mr. Gutierrez for a deposition until after all depositions are complete, including a Rule 30(b)(6) deposition of LaGen and/or NRG, and the continued need for the deposition have been demonstrated. . . ." (R. Doc. 312 at 1). In addition to similar arguments raised in opposition to Entergy's Motion to Compel Gutierrez ESI, LaGen and NRG argue that Mr. Gutierrez's deposition should be prevented because he is a high level executive of a large corporation. (R. Doc. 312-1 at 2-9).

LaGen and NRG argue that the Fifth Circuit's reasoning in *Salter* compels this result. The Court disagrees. In *Salter*, the plaintiffs sued a pharmaceutical company for wrongful death damages allegedly caused by the company's failure to adequately test and label a prescription drug. *Salter*, 593 F.2d 649, 650. The Fifth Circuit upheld a protective order requiring the plaintiff to first depose employees with more knowledge of the product at issue before determining

whether the president's deposition was necessary, concluding that "[t]he judge's attempt to postpone or prevent the necessity of taking [the president's] deposition was within his discretion in light of defendant's reasonable assertions that [the president] was extremely busy and did not have any direct knowledge of the facts." *Id.* at 651. The *Salter* decision does not create any so-called "apex witness" deposition rule requiring special treatment of "high-level" corporate managers. *See Ene v. Maxim Healthcare Servs., Inc.*, No. 09-2453, 2011 WL 13266873, at *1 (S.D. Tex. Nov. 29, 2011) ("[N]othing in *Salter* alters the usual standard under Federal Rule of Civil Procedure 26(c) placing the burden on the party opposing discovery to show good cause for a protective order.") (citing *In re Terra*, 134 F.3d at 306)); *see also United States v. McKesson Corp.*, No. 08-214, 2011 WL 2708494, at *1-2 (N.D. Miss. July 11, 2011) ("Given the liberal discovery standard and a party's right to use depositions as a discovery tool, along with the Fifth Circuit's commentary in *Upjohn* and the minimal burden the deposition will place . . . , this court finds that the deposition of [the corporate executive] is warranted and should be allowed.").

As discussed above, Entergy has put forth documentation establishing that Mr. Gutierrez is likely to have unique information not available through the other designated custodians. It appears that Mr. Gutierrez was the ultimate decisionmaker on the settlement at issue and would have personal knowledge of his own decision-making process and discussions with other individuals on the settlement. Furthermore, LaGen and NRG have suggested that "it appears that, to a significant extent, communications with Mr. Gutierrez on the relevant topics were oral." (R. Doc. 299 at 13). Accordingly, the deposition testimony to be provided by Mr. Gutierrez will not be duplicative of the ESI in his custody to be collected and produced in accordance with this Order.

LaGen and NRG's arguments in support of a protective order are conclusory at best and do not make "a particular and specific demonstration of fact" in support of a finding of good cause for the issuance of a protective order under Rule 26(c)(1). *See In re Terra*, 134 F.3d 302, 306. Accordingly, the Court will deny the motion.

**III. Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Entergy's Motion to Compel Settlement Documents (R. Doc. 285) is **DENIED** without prejudice to refiling after the parties have met and conferred in good faith with respect to the issues raised in the motion.

**IT IS FURTHER ORDERED** that Entergy's Motion to Compel Gutierrez ESI (R. Doc. 296) is **GRANTED IN PART and DENIED IN PART** consistent with the body of this Order. LaGen and NRG must run additional searches for the date ranges proposed by Entergy with Mr. Gutierrez as a custodian, using the underlying search terms and connectors to which LaGen and NRG have agreed upon for other custodians. LaGen and NRG must collect, review, and produce the ESI within a reasonable time frame, but no later than the close of non-expert discovery.

**IT IS FURTHER ORDERED** that LaGen and NRG's Motion for Protective Order (R Doc. 312) is **DENIED**. Entergy may re-notice the deposition of Mr. Gutierrez to occur prior to the close of non-expert discovery with no requirement that other depositions must first occur.

**IT IS FURTHER ORDERED** that any further motion[10] pertaining to written discovery in this action must provide a certification that the parties conferred in good faith and have satisfied the requirements of the ESI Protocol (R. Doc. 237-1). In addition, any future Rule

[10] The Motion to Compel filed January 4, 2021 (R. Doc. 320) is still subject to the certification requirements of the federal rules, and failure to satisfy those obligations to the Court's satisfaction may result in denial of the motion for that reason alone. The motion is not, however, subject to specific certification requirements set forth herein.

37(a)(1) or Rule 26(c)(1) certificate filed must specifically set forth the following: (1) how the conference was scheduled and agreed upon, (2) who participated in the conference, (3) when the conference took place, (4) whether the conference was conducted by phone or in person, (5) the duration of the conference, (6) the specific, itemized topics that were addressed at the conference, and (7) whether any issues were resolved by the parties. In the alternative, the Rule 37(a)(1) or Rule 26(c)(1) certificate must detail the moving counsel's good faith attempts to confer with opposing counsel and provide evidence that opposing counsel refused to confer after reasonable notice.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on January 4, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**